

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

March 29, 1963

Hon. R. L. Lattimore　　　　　Opinion No. C-50
Criminal District Attorney
Hidalgo County　　　　　　　Re: Whether "Lucky Car
Edinburg, Texas　　　　　　　　　Night", a give away
　　　　　　　　　　　　　　　　program, constitutes
　　　　　　　　　　　　　　　　a lottery under the
Dear Sir:　　　　　　　　　　　stated facts.

　　　　　You have requested an opinion of this office on the following questions:

　　　　　1. "Whether 'Lucky Car Night', a give away program constitutes a lottery under the stated facts."

　　　　　2. "Whether the answer would be different if the theatre, through some method of general circulation, freely distributed the registration cards to parked cars in the towns in the area being served by the theatre?"

　　　　　The following information was submitted with the opinion request:

　　　　　"Every night of the week the registration cards are available at the Box Office out side the theater and also at the Snack Bar inside the theater on request of anyone, not under 18 years of age, who drives a car to the theater. When a car is entering the theater, a registration card is given to the driver when the theater ticket is purchased. There is no limitation on the number of times anyone driving a car may register, (their car) and additional registration cards are given at any time upon request. Following the drawing each Tuesday night the card drawn, winner or not, is placed on the bulletin board on the Snack Bar, and a copy of such card is displayed at the Box Office. Each

-227-

Tuesday the sign in front of the theater, in addition to advertising the two features showing that night, also has the words 'Lucky Car Night'. Anyone desiring to register without paying admission and entering the theater may drive to the Box Office, located outside the theater, request a card, fill it out and return it to the Box Office. The drawing is conducted each Tuesday night inside the theater and the winning car is announced through loud speakers at the Box Office and the Snack Bar." (words in parentheses not part of quote)

On the reverse side of the registration card is an explanation of the procedure followed by the Drive-In.

"How It Works

"1. Winning car will be announced at a drawing through loud speakers at the snack bar and box office of the BUCKHORN DRIVE-IN THEATER at 8:45 P.M. every TUESDAY, to be eligible to receive the award, if your car is announced as a winner, you must present your car to the outside box office or inside snack bar within 5 minutes after your car has been announced.

"2. If the award is not claimed within the specified time, it will be carried over to the following week and $10.00 or more will be added weekly until a qualified winner appears. If the award reaches $500.00 a second will be started and 2 or more names announced.

"3. The success of this plan depends upon free participation therefore, registration, qualification and awards are absolutely free."

Article III, Section 47 of the Constitution of Texas provides:

"The Legislature shall pass laws prohibiting the establishment of lotteries and gift enterprises in this State, as well as the sale of tickets in lotteries, gift enterprises or other evasions involving the lottery principle, established or existing in other States."

Pursuant to this constitutional command, the Legislature passed Article 654 of the Penal Code, which reads as follows:

"If any person shall establish a lottery or dispose of any estate, real or personal, by lottery, he shall be fined not less than one hundred nor more than one thousand dollars; or if any person shall sell, offer for sale or keep for sale any tickets or part ticket in any lottery, he shall be fined not less than ten nor more than fifty dollars."

In 28 Texas Jurisprudence, 409, we find the following definition of a lottery:

"The term lottery has no technical signification in the law and since our statute does not provide a definition, its meaning must be determined from popular usage. According to that test a lottery is <u>a scheme for the distribution of prizes by lot or chance among those who have paid or agreed to pay a consideration for the right to participate therein, for the distribtuion itself."</u> (Emphasis added).

Under the set of facts presented unquestionably two of the elements, prize and chance, are present. The question for our determination is, therefore, whether or not the element of consideration is present under the plan submitted.

Various "Bank Nite" schemes conducted by motion picture theaters, have been considered by the Texas courts and almost without exception these plans have been held to be lotteries, despite the fact that both patrons and non-patrons of the theaters were allowed to participate. The distribtion of "free" chances was held by the courts to be

a subterfuge, which would not have the effect of legalizing an otherwise illegal scheme. City of Wink v. Griffith Amusement Co., 129 Tex. 40, 100 S.W.2d 695 (1936); Cole v. State, 112 S.W.2d 725 (Tex.Crim. 1938); Robb & Rowley, United, v. State, 127 S.W.2d 221 (TexCiv.App. 1939); State v. Robb & Rowley, United, 118 S.W.2d 917 (Tex.Civ.App. 1938).

City of Wink v. Griffith, supra, was a "bank night"case, and persons were allowed to register for the drawing without buying a theater ticket. Judge Cureton, speaking for the Court said in part:

"The actual money returns on 'bank night' would suggest that if any free numbers were ever distributed, they were negligible. We gather from the whole testimony that the so-called 'free number' feature was largely one that existed in the minds of those who operated the theater, and that it was never made a real active part of the 'bank night' plan. True, no doubt if anyone had applied for a free registration to the drawing, it would have been given, but human nature is such that the average person would seldom, if at all, suffer the natural embarrassment of asking for a free registration. Indeed, if this were not so, the income from 'bank nights' would not have been sustantially more than that which had obtained prior to the operation of the plan. In fact, the whole plan is built up and made profitable because no normal person likes to 'bum' his neighbor for something, and by an appeal to the psychology of cupidity which makes some take a chance of making large gains by a small outlay. Those who invented and formulated the plan may not have been 'learned in the law,' but their knowledge of mass-psychology was not wanting."

Human nature is such that a person is not likely to drive out to the Buckhorn Drive-In Theater, get in a line of cars entering the theater, ask at the Box Office for a free card or cards, and then drive away while the patrons are buying tickets, obtaining their registration cards and entering the theater. It is true that under the plan, the registration cards are free upon request, but unless requested no registration card is given or offered to anyone unless they purchase a ticket to the show.

Certainly the patron is favored over the non-patron since a registration card is given to the patron freely upon buying a theater ticket. However, the non-patron must go to the box office and request a registration card and suffer the embarrassment that naturally follows when he says he is not buying a ticket to the show. See Brice v. State, 252 S.W.2d 433 (Tex.Crim. 1951).

Also, the patron is favored over the non-patron since the winner needs to be present within five minutes after the drawing to collect the prize. This would, of course, almost eliminate anyone except a patron from winning. In State v. Robb & Rowley, supra, the Court said on motion for rehearing:

> "All that was required of one desiring to participate in a drawing, was to have his name entered on the register. But if his name was drawn, he had to present himself within 3 minutes in the showhouse. This was a strong motive, and was intended as such, to make one who desired to participate, pay for admission and be present on the night of a drawing. If the one whose name was drawn was not required to present himself in the showhouse until the night succeeding the drawing in order to become available to receive the award, the motive to purchase a ticket of admission would be greatly weakened. We construe the opinion in the Cole case to hold, what we conceived to be a motive, to be indirect consideration, and further to hold that indirect consideration is consideration, and that there was therefore present in the transaction the essential element of consideration to make of it a lottery."

It is evident from the Texas cases that the lottery statute cannot be circumvented by a mere subterfuge or evasion of the lottery laws by offering a few "free chances' or making it practically impossible for a "free chance" to win. Featherstone v. Independent Service Station Association 10 S.W.2d 124 (Tex.Civ.App. 1928).

It is our opinion that Lucky Car Night is a lottery and, further, that a scheme of general distribution of the registration cards would not make a difference.

Even looking past the embarrassing feature of having non-patrons go up to the box office and ask for a registration card, which would be eliminated with a general distribution of the registration cards, the requirement of having the winner appear within five minutes would have the practical effect of limiting the winner to a patron of the theater.

## S U M M A R Y

A plan which would have the practical effect of limiting the winners to patrons of the theater by requiring the winner to present his car within five minutes at the snack bar or box office is a lottery.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By Irwin R. Salmanson
Irwin R. Salmanson
Assistant Attorney General

IRS:cjs

APPROVED:
OPINION COMMITTEE:
W. V. Geppert, Chairman
Howard Fender
Samuel S. Pharr
Malcolm Quick
Ernest Fortenberry

APPROVED FOR THE ATTORNEY GENERAL
By:  Stanton Stone